07-3903-cv
Kiobel v. Millson

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: January 12, 2009                                    Decided: January 8, 2010)

Docket No. 07-3903-cv

ESTHER KIOBEL, individually and on behalf of her late husband, DR. BARINEM KIOBEL, BISHOP AUGUSTINE NUME JOHN-MILLER, CHARLES BARIDORN WIWA, ISRAEL PYAKENE NWIDOR, KENDRICKS DORLE KWIKPO, ANTHONY B. WITAH-KOTE, VICTOR B. WIFA, DUMLE J. KUNENU, BENSON MAGNUS IKARI, LEGBARA TONY IDIGMA, PIUS NWINEE, KPOBARI TUSIMA,

    *Plaintiffs-Appellees*,

    v.

RORY O. MILLSON, THOMAS G. RAFFERTY, MICHAEL T. REYNOLDS,

    *Appellants*,

ROYAL DUTCH PETROLEUM COMPANY, SHELL TRANSPORT & TRADING COMPANY PLC, SHELL PETROLEUM DEVELOPMENT COMPANY OF NIGERIA, LTD.,

    *Defendants.*[*]

Before: JACOBS, *Chief Judge*, LEVAL, and CABRANES, *Circuit Judges*.

    Appeal from an order of the United States District Court for the Southern District of New York (Kimba M. Wood, *Chief Judge*) sanctioning appellants pursuant to Rule 11 of the Federal Rules of Civil Procedure for making factual representations that lacked evidentiary support. Under our precedents, a statement of fact can give rise to the imposition of Rule 11 sanctions only when the particular allegation is utterly lacking in support. Based on our review of the record, we conclude as a

---

[*] The Clerk of Court is directed to amend the official caption in this case to conform to the listing of the parties above.

1

matter of law that none of the statements identified by the District Court meet this standard, and we therefore reverse the order of the District Court imposing Rule 11 sanctions on appellants.

Chief Judge Jacobs, Judge Leval, and Judge Cabranes each file a separate concurring opinion on a question raised but not resolved in this appeal—the authority *vel non* of magistrate judges to issue orders sanctioning attorneys pursuant to Rule 11 of the Federal Rules of Civil Procedure.

> PETER NORDBERG (Stephen A Whinston, Carey R. D'Avino, Keino R. Robinson, *on the brief*), Berger & Montague, P.C., Philadelphia, PA., *for Plaintiff-Appellees.*
>
> ROWAN D. WILSON (Douglas J. Dixon, Noah J. Phillips, *on the brief*), Cravath, Swaine & Moore LLP, New York, NY, *for Appellants.*

JOSÉ A. CABRANES, *Circuit Judge*:

In this appeal we consider a challenge to the imposition of sanctions under Rule 11 of the Federal Rules of Civil Procedure. Appellants are defense counsel in an action brought pursuant to the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, for alleged violations of customary international law in Nigeria. They seek review of an order of the United States District Court for the Southern District of New York (Kimba M. Wood, *Chief Judge*), affirming the order of a magistrate judge, that sanctioned them for making factual representations that allegedly lacked evidentiary support. Appellants challenge the order of the District Court on two grounds. First, they contend that a magistrate judge is not authorized to issue an order imposing Rule 11 sanctions, and the District Judge should have therefore construed the Magistrate Judge's "Opinion and Order" as a report and recommendation under 28 U.S.C. § 636(b)(1)(B) subject to *de novo* review. Second, they argue that the imposition of Rule 11 sanctions based on the statements identified by plaintiffs cannot be sustained as a matter of law in light of the record evidence that supported those statements.

2

The panel is evenly divided on the first ground raised in this appeal, with one member of the panel concluding that magistrate judges have authority to impose Rule 11 sanctions, another judge concluding that they do not, and the third declining to endorse either view in light of the statute's ambiguity. *See post*. Fortunately, we need not decide whether the District Judge applied the correct standard of review to the Magistrate Judge's determination that Rule 11 sanctions were warranted in this case, because we agree with appellants' second basis for challenging the order of the District Court. As explained in greater detail below, the record evidence does not provide an adequate basis to impose Rule 11 sanctions on appellants. Therefore, we rely solely on the second ground advanced by appellants to resolve this appeal.

## BACKGROUND

This appeal arises from a putative class action brought under the ATS. The complaint charged three affiliated corporate entities with violations of international law for their involvement in oil exploration and development in Nigeria. *See Kiobel v. Royal Dutch Petroleum Co.*, 456 F. Supp. 2d 457 (S.D.N.Y. 2006). Plaintiffs moved for class certification pursuant to Rule 23(c) of the Federal Rules of Civil Procedure, and the District Court referred that motion to a magistrate judge for a report and recommendation under § 636(b)(1)(B). *See Kiobel v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618, 2004 U.S. Dist. LEXIS 28812 (S.D.N.Y. Mar. 31, 2004). On March 31, 2004, Magistrate Judge Henry B. Pitman recommended that the District Court deny plaintiffs' motion for class certification. *Id.* at *43.

Plaintiffs objected to the Magistrate Judge's report and recommendation, and defendants filed an opposition to those objections. In that opposition, defense counsel stated, *inter alia*: (1) "Now we have learned that seven of the identified witnesses [in support of plaintiffs' claims] are being paid for their testimony;" (2) "[T]here can be no doubt that the witnesses are giving testimony that [plaintiffs']

counsel knows to be false;"[1] and (3) "[W]e know that between February 29, 2004 and April 2, 2004, Berger & Montague [plaintiffs' counsel] wired $15,195 to the Benin Republic for the benefit of the witnesses." J.A. 344. On the basis of these statements, plaintiffs charged defense counsel—who are the appellants in this matter—with violating Rule 11(b)(3) of the Federal Rules of Civil Procedure, alleging that defense counsel's statements had no evidentiary support. Pursuant to Rule 11, plaintiffs filed a motion for the imposition of sanctions against defense counsel. Opposing that motion, defense counsel argued that their statements were supported by record evidence.

In an Opinion and Order dated September 29, 2006, the Magistrate Judge denied plaintiffs' motion with respect to the first statement,[2] having found some support for it in the record, *see Kiobel v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618, 2006 U.S. Dist. LEXIS 71421, at *13 (S.D.N.Y. Sept. 29, 2006), but granted the motion with respect to the second[3] and third[4] statements, *see id.* at *29, *32-34. With respect to the second statement, the Magistrate Judge imposed a $5,000 sanction on each attorney who signed the opposition filing, *see id.* at *36, but he declined to impose monetary sanctions for making the third statement because "[a]lthough defendants' counsel overstated the amount of money sent to benefit the [plaintiffs'] [w]itnesses, the amount of the overstatement was small (approximately $3,000) and did not materially change the nature of the statement," *id.* at *34. The Magistrate Judge also awarded plaintiffs one-third of their attorneys' fees arising from their partially successful Rule 11 motion. *See id.* at *37.

---

[1] The next sentence of the opposition read: "There will be further discovery into the question of who caused these witnesses to give obviously false testimony." J.A. 344.

[2] "Now we have learned that seven of the identified witnesses are being paid for their testimony." J.A. 344.

[3] "[T]here can be no doubt that the witnesses are giving testimony that counsel knows to be false." J.A. 344.

[4] "[W]e know that between February 29, 2004 and April 2, 2004, Berger & Montague wired $15,195 to the Benin Republic for the benefit of the witnesses." J.A. 344.

Counsel for defendants appealed the Magistrate Judge's September 29, 2006 Order to the District Court. Applying a deferential "clearly erroneous or contrary to law" standard of review under 28 U.S.C. § 636(b)(1)(A), the District Court affirmed the imposition of sanctions in an unpublished order dated August 10, 2007. *See* Sp. App. 35, 37. This appeal followed.

## DISCUSSION

We review an order imposing Rule 11 sanctions for abuse of discretion. *See, e.g., Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 387 (2d Cir. 2003). An "abuse of discretion" occurs when a district court "base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or render[s] a decision that cannot be located within the range of permissible decisions." *Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) (citations and internal quotation marks omitted). Here, the District Court's decision to impose sanctions based on the statements challenged by plaintiffs has no support in law or logic—and therefore constitutes an "abuse of discretion." A statement of fact can give rise to the imposition of sanctions only when the "particular allegation is utterly lacking in support." *Storey*, 347 F.3d at 388 (internal quotation marks omitted). As described in greater detail below, neither of the statements that the Magistrate Judge and the District Judge held sanctionable meets this standard as a matter of law, and they therefore cannot give rise to the imposition of sanctions pursuant to Rule 11.

1. **"[T]here can be no doubt that the witnesses are giving testimony that counsel knows to be false."**[5]

The Magistrate Judge held that there was no support whatsoever for defense counsel's allegation that the Benin witnesses gave testimony that plaintiffs' counsel knew to be false. *See Kiobel*,

---

[5] The Magistrate Judge and plaintiffs' counsel read this statement as an accusation that plaintiffs' counsel was instructing witnesses to testify falsely. Such an interpretation is not compelled by the plain meaning of the text.

5

2006 U.S. Dist. LEXIS 71421, at *29.  In defense of this statement, defense counsel argue that based on circumstantial evidence—including the size of the payments to the witnesses and the rush to depose them just before the end of discovery—it was reasonable to infer that plaintiffs' counsel knew that testimony so elicited was likely to be false.  More concretely, defense counsel point to moments during depositions when they directly told plaintiffs' counsel that certain witnesses were testifying falsely.  J.A. 529, 539.  For instance, one witness, Ejiogu, testified that he had not returned to Nigeria since he fled in September 2003, but another witness, John-Miller, testified that Ejiogu subsequently returned to Nigeria to meet with plaintiffs' counsel.  *Id.* at 529-30, 621, 648.  The Benin witnesses also denied knowing one another even though plaintiffs' counsel was housing them together in a "compound" in Benin.  *Id.* at 530.  While there might have been reasons—perhaps even good ones—for these contradictions and inconsistencies, those contradictions were as apparent to plaintiffs' counsel as they were to defense counsel.  It was reasonable in the circumstances for defendants' counsel to conclude not only that some of the testimony of the witnesses was false, but also that plaintiffs' counsel were aware of the falsity.

Defense counsel also point to fourteen statements of the Benin witnesses that they contend were so obviously false that plaintiffs' counsel must have known of their falsity.  The strongest of these statements came from a witness who testified that "Shell had a $260 billion contract" in Nigeria, notwithstanding that the Shell Petroleum Development Company of Nigeria had annual pre-tax expenses of only $1 billion and Nigeria's annual gross domestic product during the relevant time period was only $30 billion.  *Kiobel*, 2006 U.S. Dist. LEXIS 71421, at *22-23.  The Magistrate Judge disagreed, explaining "[i]t may well be that the witness was referring to a multi-year or multi-decade contract; the witness may have been confusing units of currency; the witness may have been confusing billion and

6

million or the witness may have just been wrong."[6]  *Id.* at *23.  The flaw in the Magistrate Judge's analysis is that defense counsel need not prove the truth of their accusation, only that it was not "utterly lacking in support."  *Storey, L.L.C.*, 347 F.3d at 388.  As the Magistrate Judge acknowledged, *see id.*, many reasonable inferences can be drawn from testimony that Shell held a contract in Nigeria that was worth nearly ten times that annual GDP of that country.  He failed to recognize, however, that one of those reasonable inferences is that the witness gave false testimony that plaintiffs' counsel knew to be false because it was so wildly off-base.

In light of this record evidence, it was legally erroneous for the Magistrate Judge to conclude that the statement "there can be no doubt that the witnesses are giving testimony that counsel knows to be false," J.A. 344, was utterly lacking in support and therefore sanctionable.

2. **"[W]e know that between February 29, 2004 and April 2, 2004, Berger & Montague wired $15,195 to the Benin Republic for the benefit of the witnesses."**

We also reject the Magistrate Judge's determination that there was a lack of evidentiary support for defense counsel's allegation that plaintiffs' counsel "wired $15,195 to the Benin Republic for the benefit of the witnesses."  J.A. 344.  The Magistrate Judge determined that this figure "overstated the amount sent by $3,000 or approximately twenty-five percent," and therefore in violation of Rule 11. *Kiobel*, 2006 U.S. Dist. LEXIS 71421, at *32-33.[7]  The source of this supposed error, in the Magistrate Judge's view, was the inclusion in the $15,195 figure of a $5,000 wire transfer from plaintiffs' counsel to

---

[6] The distinction between "wrong" and "false" is not examined in the Magistrate Judge's opinion. Nevertheless, it would be remarkable if, under Rule 11, calling an untrue statement "wrong" is permissible, but calling it "false" is sanctionable.  Reference to a dictionary shows that the first definition of "false"—"not corresponding to the truth or reality; not true," Webster's Third New International Dictionary 819 (17th ed. 1976)—is virtually identical to one of the definitions of "wrong"—"not agreeing with or conforming to the facts; erroneous; incorrect," *id.* at 2641.  If the magistrate judge was correct that the testimony may have been "wrong,"then it may also have been "false."

[7] The Magistrate Judge determined that monetary sanctions for this perceived violation of Rule 11 were not warranted, however, because "the amount of the overstatement was small (approximately $3,000) and did not materially change the nature of the statement."  *Kiobel*, 2006 U.S. Dist. LEXIS 71421, at *34.  Even though this perceived violation of Rule 11 did not result in monetary sanctions, we nevertheless review the ruling because of the injurious effect that a judicial determination of a Rule 11 violation has on an attorney's professional reputation.

the Benin witnesses. That $5,000 transfer included, in the view of the Magistrate Judge, "$3,000 . . . [that was] allocated to a pre-existing balance unrelated to the Benin [w]itnesses." *Id.* at \*31. Accordingly, the Magistrate Judge concluded that defense counsel's allegation that plaintiffs' counsel wired $15,195 to the Benin witnesses lacked evidentiary support because defense counsel had evidence showing that only $12,195 had actually been sent.

The Magistrate Judge's determination is flawed for at least two reasons. First, it is not clear that defense counsel's statement is false. The record evidence does not show that the $3,000 in question covered services totally unrelated to the Benin witnesses. It shows that $3,000 was paid against a pre-existing balance, *see id.* at \*32, but the source of that balance is not clear. It could very well be that the entire $5,000 payment was connected with services provided to the Benin witnesses. Nothing in the record contradicts that inference. Indeed, it is hard to condemn as unreasonable the inference that the $5,000 payment—although comprising both a prior balance and future expenses—was made for a single purpose: the maintenance of the Benin witnesses. Because this inference was not "utterly lacking in support," *Storey*, 347 F.3d at 388, it cannot give rise to Rule 11 sanctions.

Second, even if the statement was literally false—*i.e.*, defense counsel should have excluded $3,000 from the $15,195 that it alleged was sent to the Benin witnesses—such an error does not violate Rule 11. "Rule 11 sanctions are a coercive mechanism, available to trial court judges, to enforce ethical standards upon attorneys appearing before them, while being careful not to rein in zealous advocacy." *Pannonia Farms, Inc. v. USA Cable*, 426 F.3d 650, 652 (2d Cir. 2005). As the Court of Appeals for the First Circuit has held, "Rule 11 neither penalizes overstatement nor authorizes an overly literal reading of each factual statement." *Navarro-Ayala v. Hernandez-Colon*, 3 F.3d 464, 467 (1st Cir. 1993) (Breyer, C.J.); *see also Forrest Creek Associates, Ltd. v. McLean Sav. & Loan Ass'n*, 831 F.2d 1238, 1245 (4th Cir. 1987) ("[Rule 11 sanctions] do[ ] not extend to isolated factual errors, committed in good faith, so long

8

as the pleading as a whole remains 'well grounded in fact.'").  There is nothing in the record suggesting that defense counsel intentionally inflated the amount wired to the Benin witnesses by $3,000 or, as the Magistrate Judge concluded, that the overestimate had a material impact on the meaning of the statement, *see Kiobel*, 2006 U.S. Dist. LEXIS 71421, at \*34.  Accordingly, the possible overstatement of the amount allegedly sent by plaintiffs' counsel to the Benin witnesses (insofar as any exists) does not violate Rule 11.  The decision of the Magistrate Judge to the contrary constituted an error of law.

## CONCLUSION

Regardless of whether the District Judge should have reviewed the Magistrate Judge's decision under a *de novo* or more deferential standard of review, the imposition of sanctions in this case cannot stand as a matter of law because the statements at issue do not violate Rule 11.  Accordingly, the August 10, 2007 order of the District Court, affirming the Magistrate Judge's September 29, 2006 order imposing Rule 11 sanctions, is **REVERSED.**

JOSÉ A. CABRANES, *Circuit Judge*, concurring:

On this appeal, we are asked to consider whether magistrate judges, when acting pursuant to a district court's reference under 28 U.S.C. § 636(b),[8] are authorized to issue orders sanctioning attorneys pursuant to Rule 11 of the Federal Rules of Civil Procedure or are authorized only to make recommendations to district judges on whether Rule 11 sanctions should be imposed. We do not answer that question in this case because, regardless of a magistrate judge's authority, the Rule 11 sanctions at issue here cannot stand as a matter of law. Even though we are able to decide this case without resolving the threshold question presented, there remains a need for guidance on how a district court should review the determination of a magistrate judge that Rule 11 sanctions are warranted. *Compare Rates Tech. Inc. v. Mediatrix Telecom, Inc.*, No. 05-CV-2755, 2007 U.S. Dist. LEXIS 48237, at *4 (E.D.N.Y. June 29, 2007) (applying *de novo* review), *with Lawrence v. Wilder Richman Sec. Corp.*, 467 F. Supp. 2d 228, 233 (D. Conn. 2006) (applying clearly erroneous or contrary to law standard). Judge Leval has offered his views on the matter, Leval op. *infra*, and I offer my own in this separate opinion. In light of the fact that this issue is unsettled in our Circuit, there may be merit in Judge Leval's advice to district judges, that in reviewing orders of magistrate judges imposing sanctions under Rule 11 they try to make the issue moot by declaring "regardless of whether the standard of review is deferential or *de novo*, [the district judge] would impose the same sanction[.]" Leval op. *infra* at 24. I am not certain that Judge Leval is right when he writes that "[i]t is only in the case where the district court would uphold the sanction if review is deferential but would withhold it if review is *de novo* that a higher court will need to decide the question." *Id.* That said, Judge Leval and I have now provided some modest assistance to notes and comments editors of law reviews in search of an agenda, so we need not go

---

[8] I do not address here the authority of a magistrate judge to award sanctions when acting pursuant to the consent of the parties under 28 U.S.C. § 636(c). Because magistrate judges have substantially greater authority when acting with the consent of the parties, *see, e.g.*, 28 U.S.C. § 636(e)(3)-(4), I consider only provisions related to a magistrate judge's powers when acting on referral from a district court.

1

*mano a mano* on the concept of "dicta within dicta."

Pursuant to 28 U.S.C. § 636(b)(1)(A), magistrate judges are authorized to resolve "pretrial matter[s]" by order subject to review by district judges for clear error. Excluded from this grant of authority are dispositive motions, such as motions "for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information . . . , to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim . . . , and to involuntarily dismiss an action." 28 U.S.C. § 636(b)(1)(A); *see Williams v. Beemiller, Inc.*, 527 F.3d 259, 265 (2d Cir. 2008) (concluding that the list of motions set forth in this subsection is "non-exhaustive"). Dispositive motions, and certain other matters, may be submitted to a magistrate judge for a report and recommendation, which the district court then reviews *de novo*. *See* 28 U.S.C. § 636(b)(1)(B). The Supreme Court has construed this statutory grant of authority to mean that "'nondispositive' pretrial matter[s] [are] governed by § 636(b)(1)(A)" and "'dispositive' matter[s] [are] covered by § 636(b)(1)(B)." *Gomez v. United States*, 490 U.S. 858, 873-84 (1989); *see also* Fed. R. Civ. P. 72(a) ("When a pretrial matter *not dispositive of a party's claim or defense* is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision." (emphasis added)).

Although this Court has not determined whether an order granting Rule 11 sanctions is "dispositive" or "nondispositive" of a claim, other courts have. The Sixth and Seventh Circuits have held that decisions on Rule 11 motions are dispositive of a claim and are therefore not properly resolved by order of a magistrate judge. In *Bennett v. General Caster Service of N. Gordon Co.*, the Sixth Circuit reasoned that "[n]othing in the [Federal Magistrates] Act expressly vests magistrate judges with jurisdiction to enter orders imposing Rule 11 sanctions" and "Rule 72(a) authorizes a magistrate judge to enter an order only as to a 'pretrial matter . . .' that is not dispositive of a 'claim or defense of a

2

party.'" 976 F.2d 995, 998 (6th Cir. 1992). Observing that the "magistrate judge's purported order entered pursuant to appellees' Rule 11 motion resulted in an award of money damages," the Sixth Circuit concluded that "[n]othing remained but to execute the judgment; therefore, this purported order was dispositive of the Rule 11 matter and, consequently, dispositive of a 'claim.'" *Id.* As such, that court concluded, a Rule 11 motion cannot be resolved by an order of a magistrate judge; rather, "[a] magistrate judge should . . . issue a report and recommendation for *de novo* review by the district court." *Id.* In further support of this conclusion, the Sixth Circuit noted that "Congress specifically withheld from magistrate judges jurisdiction over contempt proceedings . . . [which] are closely analogous to Rule 11 sanctions." *Id.* at 998 n.7.

Similarly, the Seventh Circuit held in *Alpern v. Lieb* that, upon the referral of a Rule 11 motion for sanctions, a "magistrate judge lacked authority to do anything other than make a recommendation." 38 F.3d 933, 936 (7th Cir. 1994) (Easterbrook, *J.*). Recognizing that "an award under Rule 11 is conceptually distinct from a decision on the merits," that court found them similar insofar as an award under Rule 11 "requires one party to pay money to another" and "the denial of a request for sanctions has an effect similar to the denial of a request for damages." *Id.* at 935. It also found support for its analogy in the fact that "[a]wards of sanctions . . . are treated as separate claims for purposes of appellate jurisdiction." *Id.* On that basis, the Seventh Circuit concluded that "[t]he power to award sanctions, like the power to award damages, belongs in the hands of the district judge." *Id.*; *see also Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 869 (7th Cir. 1996) ("The fact that an attorney was the subject of a sanctions request does not change the fact that resolution of a sanctions request is a dispositive matter capable of being referred to a magistrate judge only under § 636(b)(1)(B) or § 636(b)(3), where the district judge must review the magistrate judge's report and recommendations *de novo.*").

3

Plaintiffs rely on the Ninth Circuit's decision in *Maisonville v. F2 America, Inc.* to support their position that magistrate judges can issue orders imposing Rule 11 sanctions. 902 F.2d 746, 748 (9th Cir. 1990). In *Maisonville*, a panel of the Ninth Circuit reasoned that Rule 11 sanctions were "non-dispositive," and therefore, magistrate judges did have the general authority to impose sanctions under Rule 11. I am not persuaded by this logic, however, because subsequent events have altered the relevant legal context in which the Ninth Circuit panel ruled. In *Maisonville*, the magistrate judge sanctioned the plaintiff's attorney under Rule 11 for filing a frivolous motion to reconsider the magistrate judge's denial of Rule 37 sanctions against defendants for discovery abuses. As the Ninth Circuit in *Maisonville* noted, the "motion for reconsideration [at issue] was a discovery motion" and "[d]iscovery motions fall within the ambit of Rule 11." In 1993, after the ruling in *Maisonville*, Rule 11 was amended to exclude sanctions arising from discovery disputes. *See* Fed. R. Civ. P. 11(d) ("This rule does not apply to disclosures and discovery requests, responses, objections and motions under Rules 26 through 37.").[9] In light of this change in the scope of Rule 11, I am skeptical that the Ninth Circuit's ruling remains sound. As I describe in greater detail below, discovery disputes are within the core statutory authority of magistrate judges, and it is not surprising that Congress and the courts would grant magistrate judges broader power over the regulation of discovery. Accordingly, I believe that the significance of *Maisonville* has been diminished by subsequent changes in the relevant law, and that decision, a product of the legal context in which it was written, does not provide a sound counter-argument to the position of the Sixth and Seventh Circuits.

I am persuaded by the reasoning of the Sixth and Seventh Circuits holding that a magistrate

---

[9] Sanctions for discovery abuses are now imposed pursuant to Rule 37 of the Federal Rules of Civil Procedure.

4

judge is not authorized to issue an order imposing Rule 11 sanctions.[10]  I reach this conclusion because a Rule 11 motion for sanctions, though it arises in the context of an underlying action, is the functional equivalent of an independent claim.  *Cf. Williams*, 527 F.3d at 265 (citing *Vogel v. United States Office Prods. Co.*, 258 F.3d 509, 514-17 (6th Cir. 2001)).  On this point, the Supreme Court has compared a motion for Rule 11 sanctions to a criminal contempt charge insofar as each is "a separate and independent proceeding at law that is not part of the original action."  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990) (internal quotation marks omitted).  Relying in part on this authority, our Court has previously recognized that "the imposition of sanctions is an issue collateral to and independent from the underlying case" and for that reason, "even when a district court lacks subject matter jurisdiction over an underlying action, it still possesses jurisdiction to impose sanctions arising from the underlying case."  *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 333 (2d Cir. 1999).

That a motion for Rule 11 sanctions gives rise to proceedings that are separate and distinct from the underlying action is apparent from the fact that, in the majority of cases, Rule 11 proceedings do not involve the same parties as the underlying action.  It has been previously recognized that Rule 11 is primarily concerned with the conduct of lawyers.  *See, e.g.*, *Cooter & Gell*, 496 U.S. at 396 ("[A] Rule 11 sanction . . . requires the determination of . . . whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate.");  *Pannonia Farms, Inc. v. USA Cable*, 426 F.3d 650, 652 (2d Cir. 2005) ("Rule 11 sanctions are a coercive mechanism, available to trial court judges, to enforce ethical standards upon attorneys appearing before them, while being careful not to rein in zealous advocacy.").  *See generally* Fed. R. Civ. P. 11 advisory committee's note ("The rule retains the

---

[10] Judge Leval argues that my "focus on the . . . decisions in *Bennett* and *Alpern* . . . is arbitrary . . . [because] seven circuits, including ours, considered whether magistrate judges were empowered under the pre-2000 statute to award sanctions."  Leval op. *infra* at 14.  The cases to which Judge Leval refers, however, involve sanctions for discovery abuses under Rule 11 before it was amended in 1993 or they involve sanctions under Rule 37.  Here, we consider whether magistrate judges have the authority to impose sanctions under the current Rule 11, and I need not comment on the authority of magistrate judges to impose sanctions under Rule 37.

principle that attorneys and pro se litigants have an obligation to the court to refrain from conduct that frustrates the aims of Rule 1."). Accordingly, Rule 11 sanctions are generally imposed on attorneys, not litigants. *See generally* Fed R. Civ. P. 11 advisory committee's notes ("The person signing, filing, submitting, or advocating a document has a nondelegable responsibility to the court, and in most sanctions should be sanctioned for a violation."). As a result, a motion for the imposition of Rule 11 sanctions on an attorney is not a matter contested by the parties to the underlying action, but, as here, a claim pressed by a party against counsel for an opposing party. The fact that the "parties" to a Rule 11 motion are distinct from those in the underlying action underscores the separateness of the Rule 11 claim from those pressed in the underlying action. Indeed, we have recognized this distinction in our treatment of Rule 11 orders on appeal. Under our precedents, the imposition of Rule 11 sanctions on an attorney is immediately appealable pursuant to the collateral order doctrine. *See MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 73 F.3d 1253, 1258 n.4 (2d Cir. 1996); *Morley v. Ciba-Geigy Corp.*, 66 F.3d 21, 22 n.1 (2d Cir. 1995); *see also Agee v. Paramount Commc'n, Inc.*, 114 F.3d 395, 399 (2d Cir. 1997) (holding that attorneys appealing fee awards against them must appeal in their own names).

I also agree with the Sixth and Seventh Circuits that the resolution of a motion for Rule 11 sanctions is analogous—although surely not identical—to an action for damages insofar as the desired remedy is a monetary award to the movant. As noted above, the grounds for a Rule 11 motion are independent of the merits of the underlying litigation, arising instead from the duty of candor to the court. Accordingly, a Rule 11 motion can be considered the functional equivalent of an action pressing a "claim" for the breach of the duty set forth in the rule. When a court determines that this duty has been breached and that a monetary award is warranted, the claim has been disposed of in full. Nothing remains but the entry of judgment, or its functional equivalent.

Although I recognize that these analogies—like all analogies—are imperfect, they are, I submit,

persuasive. First, as noted above, contempt proceedings are also independent and collateral proceedings for the purposes of appellate jurisdiction. *See, e.g.*, *Cooter & Gell*, 496 U.S. at 396. Nevertheless, magistrate judges may summarily punish acts of criminal contempt that occur in the magistrate judge's presence.[11] 28 U.S.C. § 636(e)(2). In such limited circumstance, then, a magistrate judge may take actions that are "dispositive" of an independent claim. This, however, is a narrow statutory exception to the general principle that magistrate judges may not dispose of claims when acting by referral, and there is no basis to expand this exception, solely by judicial action, to include Rule 11 sanctions. Second, the observation that Rule 11 sanctions are effectively independent claims because they usually require that one party pay damages to another party fails to account for some exceptions to that general rule, but remains helpful nevertheless. As Judge Leval notes, the order imposing Rule 11 sanctions may direct the offender to publish the fact that sanctions have been imposed, attend educational classes, or seek leave of the court before filing further actions. Leval op. *infra* at 20. Nevertheless, damages are a common remedy for violations of Rule 11, and that fact is surely relevant to a consideration of whether Rule 11 sanctions are an independent claim.

A determination that the disposition of a Rule 11 motion must be made by a district judge is not a disparagement of the authority of magistrate judges to preside over matters properly before them. Indeed, coercive authority is entrusted to magistrate judges for matters within their statutory authority. That is why magistrate judges have the power to impose sanctions for violations of discovery orders. In *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, for example, we held that "[m]onetary sanctions pursuant to Rule 37 for noncompliance with discovery orders usually are committed to the discretion of the magistrate [judge], reviewable by the district court under the 'clearly erroneous or contrary to law'

---

[11] Although Congress has conferred on magistrate judges broader authority to punish acts of contempt when presiding with the consent of the parties, 28 U.S.C. § 636(e)(3)-(4), this does not affect our discussion, which is limited to the authority of magistrate judges when acting by referral of a district judge, rather than upon consent of the parties.

standard." 900 F.2d 522, 525 (2d Cir. 1990). I recognize that some of the reasons which persuade me that magistrate judges lack statutory authority to impose sanctions under Rule 11 might apply also to the imposition of sanctions under Rule 37. In the context of Rule 37, however, these reasons are not persuasive because of a magistrate judge's statutory, institutional, and historical authority over discovery proceedings. Indeed, it is the broad scope of a magistrate judge's authority over discovery disputes that provides the source of his authority to impose sanctions for the violation of discovery orders. Conducting pretrial and discovery proceedings has been a core component of a magistrate judge's role in civil cases since Congress created the position of magistrate judge. *See* Federal Magistrate Act of 1968, Pub. L. No. 90-578, 82 Stat. 1107 (codified as amended at 28 U.S.C. § 631 *et seq.*). When presiding over matters unrelated to discovery, however, a magistrate judge's authority is often more circumscribed. In this case, for example, plaintiffs' motion for class certification was referred to the magistrate judge for a report and recommendation; the disposition of that motion was unquestionably beyond the authority of a magistrate judge under 28 U.S.C. § 636(b)(1)(A). This limited authority over motions for class certification is not comparable to the broad authority of a magistrate judge over discovery matters. Accordingly, I see nothing anomalous in the recognition of a magistrate judge's sanctioning authority in the context of discovery, pursuant to Rules 26 and 37, but not with respect to motions brought under Rule 11 where the authority of magistrate judges is far more narrow.

Judge Leval believes that magistrate judges' limited powers to issue criminal contempt citations undermines my argument. Leval op. *infra* at 23-24. Congress conferred additional powers on magistrate judges after *Bennett* and *Alpern*, thus, in his view, undermining the significance of those opinions. I believe that the reasoning in these cases remains sound, even if one construes citations for criminal contempt as being "dispositive" of a claim. In 2000, Congress conferred limited contempt powers on magistrate judges under 28 U.S.C. § 636(e). *See* Federal Courts Improvement Act of 2000,

8

Pub. L. No. 106-518, 114 Stat. 2410.  Under this section, magistrate judges have limited power to punish acts of contempt occurring in their presence, §636(e)(2), but must refer the matter to the district judge if the act does not occur in the magistrate's presence, § 636(e)(6)(B)(ii).[12]  Because the Supreme Court in 1990 in *Cooter & Gell* reasoned that criminal contempt charges and Rule 11 sanctions were similar, Judge Leval argues that we should read the 2000 statutory grant of limited criminal contempt authority as including authority to impose Rule 11 sanctions.  We cannot bootstrap, I submit, the minimal grant of authority to magistrate judges to punish misconduct that occurs before their eyes into a plenary power to hold  litigants and attorneys in contempt or impose Rule 11 sanctions.  To do so would undermine Congress's decision to grant magistrate judges certain powers and withhold others.  Furthermore, it would contravene general principles of statutory interpretation.  If we apply the historic presumption in favor of continuing judge-made law absent clear congressional intent otherwise, *see Midlantic Nat'l Bank v. New Jersey Dep't of Environmental Protection*, 474 U.S. 494, 501 (1986) ("The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific."), then we can and should interpret Congress's decision in 2000 to grant only limited contempt powers as an implicit ratification of the earlier Sixth and Seventh Circuits' holdings that magistrate judges do not have the authority to impose Rule 11 sanctions.[13]  Knowing of the decisions in *Bennett* and *Alpern*, Congress readily could have included the power to impose Rule 11 sanctions in 2000 when it amended § 636 to provide for limited contempt powers.  Because Congress chose to confer only limited contempt powers on magistrate judges, we

---

[12] I emphasize again that Congress granted narrow contempt powers when the magistrate is acting by referral and broader contempt powers when the magistrate is acting with the consent of the parties.  Because we here consider only whether magistrate judges have authority to impose Rule 11 sanctions when acting by referral, any powers Congress granted to magistrate judges when acting with the consent of the parties is, in my view, entirely irrelevant to the current inquiry.

[13] This assumes, I believe reasonably, that the logic of *Maisonville*, which was decided in 1990, did not survive the 1993 amendments to Rule 11, and thus that there was no split among the circuits as to whether magistrate judges could impose sanctions under the Rule 11 for actions not related to discovery.

9

should assume, pursuant to the general principles of statutory construction, that Congress intended to withhold the additional authority to impose Rule 11 sanctions.

Judge Leval correctly observes that magistrate judges have considerable coercive authority when they impose contempt citations, Leval op. *infra* at 7, but this fact does not answer the question presented, especially when one considers the restrictions on this power. Section 636(e)(6)(B) explicitly provides that, if the contumacious conduct does not occur in the magistrate judge's presence, the issue must be referred to the district judge.

Finally, I find unpersuasive Judge Leval's argument that the similarities between Rule 11 sanctions and criminal contempt citations would make subjecting them to differing levels of scrutiny illogical. Leval op. *infra* at 19. If it is true that Rule 11 sanctions bear similarities to criminal contempt citations, it is likewise true that they are similar to other actions that are subject to *de novo* review by the district judge. Examination of pleadings in response to a Rule 11 motion is, for example, functionally analogous to reviewing pleadings for conformity with Rules 8 and 10 (and Rule 9, where applicable) of the Federal Rules of Civil Procedure and analogous also to the evaluation of motions under Rule 12 of the Federal Rules of Civil Procedure. Each of these rules requires magistrate judges to assess the sufficiency and validity of the pleadings. Under Rules 8, 9, 10, and 12, the magistrate judge may only issue an advisory report subject to *de novo* review by the district judge. *See* 28 U.S.C. § 636(b)(1)(A); *see Beemiller, Inc.*, 527 F.3d at 265. Because Rule 11 also requires that a magistrate judge assess the pleadings, one could reason that a district judge is better suited to determine the necessity or propriety of the sanctions. Accordingly, it is possible to construe Rule 11 sanctions as "similar" to both dispositive and non-dispositive matters. And therein lies the flaw in Judge Leval's argument that, because the imposition of Rule 11 sanctions can be deemed "similar" to another function, they must be subject to the same level of review as that other function. Instead, we must assess the level of review

10

for Rule 11 sanctions on the basis of that Rule's own terms and on the basis of the known statutory prescriptions of Congress.

For these reasons, I would conclude that the resolution of a motion for Rule 11 sanctions is a "dispositive" determination that can be referred to a magistrate judge under § 636(b) for a report and recommendation only, which is then reviewed *de novo* by the district judge.

PIERRE LEVAL, *Circuit Judge*, concurring:

In their briefing of this appeal, the parties dispute whether Congress gave the magistrate judge the power to impose the monetary sanction (with the consequence that the sanction could be overturned only on a finding of clear error or abuse of discretion) or whether Congress withheld that power (with the consequence that the magistrate judge was empowered to do no more than recommend the sanction, subject to *de novo* confirmation by the district court). That question is not clearly answered by any statute or rule, and has generated considerable discussion among the members of this panel. Judge Cabranes has vigorously asserted that the magistrate judge was authorized by law only to recommend, and not to impose, the sanction. I was initially not persuaded by Judge Cabranes's reasons, and on deeper digging find that I disagree with his conclusion. In the end, the question is mooted for this appeal because we overturn the sanctions on a different basis. We are all in agreement, as Judge Cabranes explains in his opinion for the court, that the sanction must be vacated because there was no adequate basis in counsel's conduct to justify its imposition.

Because we decide this appeal on a different basis, we could simply ignore the mooted question, burying our considerable research and analysis. On the other hand, some day a court may need to decide the question. Especially because the question has proved more complex than superficial inspection suggests, and because many of the significant points require an understanding of the gradual evolution of the existing statute and the interpretive authorities, and the gradual growth of magistrate judge power, publication of our conflicting views may be helpful to whatever court eventually needs to decide that question. Accordingly, I set forth my view of the question, and Judge Cabranes sets forth his, for whatever benefit the airing of our debate may confer if and when the question need be resolved.[1]

---

[1] I agree with Judge Jacobs that amendment to the Federal Rules of Civil Procedure or the governing statute could usefully dispel interpretive disagreement as to Congress's intention and obviate further confusion.

1

A.

The question we face is whether, in enacting the Federal Magistrate Judge Act, 28 U.S.C. § 631 *et seq.*, Congress authorized magistrate judges to impose sanctions for violations of the Federal Rules of Civil Procedure. The Act does not provide a direct answer. Accordingly, it is necessary to search its provisions to determine what, if anything, they reveal about Congress's intentions. The task is complicated by the fact that Congress amended the Act over time, most significantly in 2000, to implement an important Congressional reappraisal of the stature and powers of Magistrate Judges. *See* Federal Courts Improvement Act of 2000, Pub. L. 106-518, § 202, 114 Stat. 2410, 2412-13 (2000) (addressing "Magistrate Judge Contempt Authority").

The section of the Act specifying the powers of magistrate judges is § 636. Section 636(b)(1)(A) broadly empowers magistrate judges to "hear and determine" *any* pretrial matter designated to them by the district court, with the exception of a specified list of matters.[2] As for the matters falling within this excepted list, the extent of the magistrate judge's powers is to take evidence and submit recommendations to the district court. *See* 28 U.S.C. § 636(b)(1)(B). The matters explicitly excluded by the Act from the magistrate judges' power to hear and determine are motions seeking judgment on the pleadings, summary judgment, dismissal of criminal charges, authority to maintain an action on behalf of a class, dismissal for failure to state a claim, and involuntary dismissal of an action

---

[2]Section 636(b)(1)(A) provides:

> [A] judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.

28 U.S.C. § 636(b)(1)(A).

(all of these being motions that would dispose of a litigant's claims), as well as motions for injunctive relief and to suppress evidence in a criminal case. *Id.* § 636(b)(1)(A). Section 636(b)(3) then adds a catchall provision that magistrate judges may be assigned "such additional duties as are not inconsistent with the Constitution and laws of the United States."

The list of matters excluded from magistrate judges' broadly stated power to hear and determine does not mention the imposition of sanctions. Nor is the imposition of sanctions prohibited to magistrate judges by any other provision of law. A literal reading of the Act would thus compel the conclusion that magistrate judges are empowered to impose sanctions.

Courts, however, have not read the list of exclusions literally. Where the exercise of an unmentioned judicial power would be so similar in character to the powers statutorily withheld from magistrate judges that it would be difficult to understand why Congress would have drawn a distinction, courts have generally ruled that Congress intended also to withhold the unmentioned power. *See Williams v. Beemiller, Inc.*, 527 F.3d 259, 265 (2d Cir. 2008) (noting that the list of exclusions in § 636(b)(1)(A) is "non-exhaustive"). Because many of the powers withheld from magistrate judges by § 636(b)(1)(A) involve the determination of the suit or of a claim or of a party's right to maintain the claim in the action, courts have generally concluded that other rulings which would have the same effect of disposing of a party's claim (or of a defense) were also intended by Congress to be excluded from the powers of magistrate judges. Courts sometimes therefore employ an imprecise shorthand, referring to the rulings over which magistrate judges are granted authority as "nondispositive" of a party's claims, and to rulings in the class withheld as "dispositive" of a party's claims. *See Gomez v. United States,* 490 U.S. 858, 868, 873-74 (1989); *Williams*, 527 F.3d at 264-65.[3]

---

[3] This shorthand is reflected in Rule 72 of the Federal Rules of Civil Procedure. Rule 72 does not undertake to specify which powers magistrate judges possess and which they do not. As the commentary to the Rule recognizes, that function is fulfilled by § 636. The function served by Rule 72 is to regulate the procedures to be followed in proceedings before magistrate judges, both for matters within the magistrate judge's power to hear and determine (which the Rule

3

Within this framework, courts have decided that, in addition to the powers explicitly withheld from magistrate judges by § 636(b)(1)(A), the power of magistrate judges to "determine" does not extend to rulings that remand a case to state court, *Williams*, 527 F.3d at 266, that enter default judgment, *Callier v. Gray*, 167 F.3d 977, 981 (6th Cir. 1999), that deny a motion to certify a district court order for interlocutory appeal, *Vitols v. Citizens Banking Co.*, 984 F.2d 168, 169-70 (6th Cir. 1993), that deny enforcement of an agency subpoena, *N.L.R.B. v. Frazier*, 966 F.2d 812, 818 (3d Cir. 1992), and that deny a motion to proceed *in forma pauperis*, *Woods v. Dahlberg*, 894 F.2d 187, 187 (6th Cir. 1990).

In *Gomez v. United States,* 490 U.S. 858 (1989), the Supreme Court, departing still further from a literal reading of the statute, ruled that the selection of the jury in a criminal case, which is not listed among the functions a magistrate judge is not authorized to perform, and which is not "dispositive" of a party's claim, is nonetheless *not* within a magistrate judge's powers. *Id.* at 875-76. The Court approached the question by tracing the history of Congress's incremental increases in the powers of these officers through a series of statutory amendments (while gradually upgrading their titular designation from Commissioner, to Magistrate, to Magistrate Judge). *Id.* at 865-71. The Court noted Congress's gradually increasing confidence in magistrate judges, and it then asked whether these indicia of Congress's confidence were sufficient to support the conclusion that Congress intended its general grant of authority to include jury selection in a criminal case. *Id.* at 869-72. Noting that Congress continued to require consent of the parties as a prerequisite to a magistrate judge's authorization to try

---

refers to as matters "not dispositive of a party's claim or defense") and for matters withheld by § 636(b)(1)(A) (which the rule refers to as "dispositive motions"). *See* Fed. R. Civ. P. 72 & advisory committee's note. It is clear this terminology is not to be taken literally. The procedures prescribed by the rule are tailored to whether the magistrate judge has authority to rule on the matter, or has authority only to recommend to the district court. As some of the powers withheld by § 636(b)(1)(A), and by interpretation of courts, do not involve disposition of a party's claim or defense, while at the same time many rulings within a magistrate judge's powers determine something that a party is claiming, the only way to make sense of Rule 72's terminology is to construe the terms "nondispositive" and "dispositive" as distinguishing between matters upon which the magistrate judge is empowered to rule, and matters as to which the magistrate judge has the power only to recommend.

jury cases, *see id.* at 870-71, and that jury selection was enormously important for the conduct of a fair criminal trial, *see id.* at 873, the Court concluded that § 636 should not be construed to authorize magistrate judges to select juries in criminal trials, at least absent the consent of the defendant, *id.* at 872.

According to this approach, it becomes pertinent to inspect Congress's amendments to the Act over time to see what light they shed on changes in Congress's confidence in magistrate judges as reflected in increasing duties and powers entrusted to them by the Act. The provisions most likely to reveal Congress's intentions with respect to the sanctioning power are those portions of the Act that define the powers of magistrate judges to impose other disciplinary and coercive remedies for misbehavior. The most relevant provision is subsection (e), 28 U.S.C. § 636(e), dealing with the contempt power. Prior to 2000, § 636(e) expressly withheld from magistrate judges the power to impose contempts. Upon the occurrence of contumacious conduct, the statute provided that magistrate judges were to certify the facts to a district judge, who would then hear the evidence and determine whether to punish the contemnor.[4]

---

[4] Subsection (e), in its pre-2000 version, stated:

> In a proceeding before a magistrate, any of the following acts or conduct shall constitute a contempt of the district court for the district wherein the magistrate is sitting: (1) disobedience or resistance to any lawful order, process, or writ; (2) misbehavior at a hearing or other proceeding, or so near the place thereof as to obstruct the same; (3) failure to produce, after having been ordered to do so, any pertinent document; (4) refusal to appear after having been subp[o]enaed or, upon appearing, refusal to take the oath or affirmation as a witness, or, having taken the oath or affirmation, refusal to be examined according to law; or (5) any other act or conduct which if committed before a judge of the district court would constitute contempt of such court. Upon the commission of any such act or conduct, the magistrate shall forthwith certify the facts to a judge of the district court and may serve or cause to be served upon any person whose behavior is brought into question under this section an order requiring such person to appear before a judge of that court upon a day certain to show cause why he should not be adjudged in contempt by reason of the facts so certified. A judge of the district court shall thereupon, in a summary manner, hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a judge of the court, or commit such person upon the conditions applicable in the case of

5

In 2000, however, in a new enactment captioned, "Magistrate Judge Contempt Authority," Congress repealed the old subsection (e), replacing it with a new subsection (e), which grants magistrate judges considerable independent authority over contempt adjudications, both criminal and civil, as follows:

- A new subparagraph (2) to § 636(e), captioned "Summary criminal contempt authority," gave magistrate judges "the power to punish summarily by fine or imprisonment, or both, such contempt of the authority of such magistrate judge constituting misbehavior of any person in the magistrate judge's presence."

- A new subparagraph (3), captioned "Additional criminal contempt authority in civil consent and misdemeanor cases," gave magistrate judges the power "upon notice and hearing" to "punish, by fine or imprisonment, or both, criminal contempt constituting disobedience or resistance to the magistrate judge's lawful writ, process, . . . or command," in all civil cases over which the magistrate judge presides with the consent of the parties under § 636(c), and misdemeanor criminal cases heard by magistrate judges with the consent of the defendant under 18 U.S.C. § 3401.

- A new subparagraph (4), captioned "Civil contempt authority in civil consent and misdemeanor cases," gave magistrate judges the full coercive "civil contempt authority of the district court" in the same categories of cases covered by subparagraph (3).

- For all criminal contempt adjudications, a new subparagraph (5) gave magistrate judges sentencing authority within the range specified by the code for Class C misdemeanors (imprisonment for up to thirty days, or a fine of up to $5,000, or both, *see* 18 U.S.C.

---

defiance of the process of the district court or misconduct in the presence of a judge of that court.

Federal Magistrates Act, Pub. L. No. 90-578, § 101, 82 Stat. 1107, 1113-1428 (1968), *codified at* 28 U.S.C. § 636(e).

§§ 3581(b)(8), 3571(b)(6)).

- Finally, and highly significant for our purposes, in the statute's only reference to the question of the authority of magistrate judges to impose sanctions under the Federal Rules, the new § 636(e)(4) expressly stated that its grant of civil contempt authority in consent cases "shall not be construed to limit the authority of a magistrate judge to order sanctions under any other statute, the Federal Rules of Civil Procedure, or the Federal Rules of Criminal Procedure." While these words do not explicitly confer on magistrate judges the power to impose sanctions, they seem to express Congress's understanding that magistrate judges possess that power. This passage says, in effect, "The fact that we expressly confer civil contempt power on magistrate judges should not be taken to imply that they lack the power to impose sanctions."

*See* Federal Courts Improvement Act of 2000, Pub. L. 106-518 § 202, *codified at* 28 U.S.C. § 636(e).

In short, in passing the 2000 amendments, Congress expressed a very much enhanced trust in magistrate judges, granting them considerable punitive powers, which had previously been absolutely withheld. To be sure, the contempt power conferred on them is not the full power possessed by a district judge appointed under Article III. Subparagraph (5) of the new § 636(e) imposes limits on the extent of punishment a magistrate judge may impose for contempt, and the magistrate judge's contempt power extends to contempts committed outside the presence of the magistrate judge only in cases where the parties to the litigation have consented to disposition of the case by the magistrate judge. Nonetheless, under the new enactment, magistrate judges were for the first time entrusted with the power to impose criminal convictions for contempt and to punish contempts by a term of imprisonment – a power considerably more awesome than the power to impose a noncriminal sanction for violation of the Federal Rules – as well as the power in some circumstances to coerce compliance with a judicial order by a civil contempt order.

7

Prior to Congress's 2000 amendments, there were reasonable arguments on both sides of the question. A strong argument against finding sanctioning power in the statute would have been that, notwithstanding the literal terms of the statute, Congress staked out a strong stance against the exercise of similar powers by magistrate judges. Congress categorically refused to allow magistrate judges to exercise contempt powers. Even though a sanction is far less consequential punishment than a holding in contempt, which can involve a criminal conviction and imprisonment (either punitive or coercive), the similarities between the two forms of order are great. The Supreme Court has, in fact, expressly noted the similarities. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990). Both sanctions and criminal contempts are judicial orders, collateral to the adjudication of the claims and defenses of the parties, which are intended to punish misconduct committed in defiance of the court's authority by a person who is subject to the court's ruling; both can also be employed to compensate the victim of the misconduct for expense and loss suffered by reason of it. Sanctions also have much in common with civil contempt orders, as the sanction can be imposed to compel compliance with judicial commands after intransigent refusal to comply. The similarities between orders of sanction and of contempt are so substantial that a sanction imposed under the Federal Rules of Civil Procedure can be viewed as a lighter, less consequential form of the same general species as a holding in contempt. The approach taken by numerous courts, reasoning by analogy, to find that certain powers were withheld by Congress from magistrate judges when they had enough in common with explicitly withheld powers, might well have suggested that the pre-2000 version of the Act implicitly denied sanctioning power. Thus, the Sixth Circuit, when it considered the question in 1992, concluded that magistrate judges are not empowered to impose sanctions, and gave as one of its reasons that "Congress specifically withheld from magistrate judges jurisdiction over contempt proceedings." *Bennett v. Gen. Caster Serv. of N. Gordon Co.*, 976 F.2d 995, 998 n.7 (6th Cir. 1992).

The opposing argument – that the sanctioning power *was* conferred by Congress pre-2000 – would have relied on the literal terms of the statute. Section 636(b)(1)(A) granted broad powers, except as specifically excluded. The express exclusions did not mention sanctions. Moreover, the most commonly imposed forms of sanctions do not dispose of any underlying claims. A sanction that does not dispose of a litigant's claim or defense is arguably not so similar to the express exclusions of § 636(b)(1)(A) that it should be deemed excluded by implication. Thus, this circuit ruled in 1990 that magistrate judges had the power to impose a sanction for discovery violations under Rule 37 of the Federal Rules of Civil Procedure, so long as the particular sanction did not determine a claim. *See Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990).[5]

Seven circuits passed on the question whether magistrate judges were empowered to impose sanctions prior to the 2000 amendments. Five of the seven, including our own, concluded that magistrate judges were authorized to impose sanctions (so long as the particular form of sanction, such as a sanction of dismissal of a claim, did not effectively dispose of a party's claim or defense).[6] Two

---

[5] If I had been required to rule on the question under pre-2000 law (without regard to my circuit's decision in *Hoar*), I probably would have ruled that Congress withheld the power, by reason of Congress's emphatic withholding of all power to hold in contempt and the very strong similarity between sanctions and contempt.

[6] *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 6 (1st Cir. 1999) ("Motions for sanctions premised on alleged discovery violations are not specifically excepted under 28 U.S.C. § 636(b)(1)(A) and, in general, they are not of the same genre as the enumerated motions. We hold, therefore, that such motions ordinarily should be classified as nondispositive."); *Hoar*, 900 F.2d at 525 (2d Cir.) ("Monetary sanctions pursuant to Rule 37 for noncompliance with discovery orders usually are committed to the discretion of the magistrate, reviewable by the district court under the 'clearly erroneous or contrary to law' standard."); *Merritt v. Int'l Bhd. of Boilermakers*, 649 F.2d 1013, 1016-17 (5th Cir. 1981) ("[T]he magistrate possessed the authority under 28 U.S.C. § 636(b)(1)(A) to enter non-dispositive discovery orders[, in this case, fees and costs in connection with a motion to compel discovery]."); *Grimes v. San Francisco*, 951 F.2d 236, 240 (9th Cir. 1991) ("The authority of magistrates to impose discovery sanctions is established by 28 U.S.C. § 636 and recognized by our decisions."); *Maisonville v. F2 America, Inc.*, 902 F.2d 746, 748 (9th Cir. 1990) ("[W]e find that the Rule 11 sanctions imposed in this case are non-dispositive. Accordingly, the magistrate had jurisdiction to order Rule 11 sanctions and the district court properly reviewed the magistrate's order for clear error."); *Ocelot Oil Co. v. Sparrow Indus.*, 847 F.2d 1458, 1462 (10th Cir. 1988) ("Discovery is clearly a pretrial matter, and magistrates thus have general authority to order discovery sanctions. They may not do so, however, if those sanctions fall within the eight dispositive motions excepted in subsection (A).").

9

circuits concluded they were not so authorized.[7]

In any event, regardless of how the pre-2000 Act should have been construed, after Congress amended the statute to expressly confer on magistrate judges a range of contempt powers, little or nothing remained of the argument that the amended statute should be construed by implication to withhold the power to impose a monetary sanction. A literal reading of the statute, with its broad authorizations, limited by explicit exclusions, communicates no suggestion of denial of the power to sanction under the Federal Rules. And reasoning by analogy, in the mode employed in *Gomez*, now tends strongly to confirm the power. Just as, prior to the 2000 amendments, Congress's express withholding of the contempt powers from magistrate judges could support a strong argument that Congress intended also to withhold the power to sanction, the grant of contempt powers to magistrate judges in 2000 now powerfully supports the conclusion that Congress intended to confer sanctioning power. It is an *a fortiori* case. The power to impose a criminal conviction and a sentence of imprisonment is very substantially more awesome than the power to impose a noncriminal sanction. If Congress conferred on magistrate judges the power to impose criminal convictions for contempt, and to put contemnors in jail, why would we interpret Congress's silence on the issue of noncriminal sanctions as an implicit denial of that power?

Nor is it correct to describe Congress's present stance on the question as "silence." While Congress did not explicitly grant or withhold the power, it did speak on the subject. And its statement that the express grant of civil contempt authority in consent cases "shall not be construed to limit the authority of a magistrate judge to order sanctions" communicates an understanding on the part of

---

[7] *Bennett*, 976 F.2d at 998 (6th Cir.) ("[T]his purported order was dispositive of the Rule 11 matter and, consequently, dispositive of a 'claim' of a party. Because this was a dispositive matter, under Fed. R. Civ. P. 72(b), the magistrate judge should have issued a report and recommendation for *de novo* review by the district court." (footnote omitted)); *Alpern v. Lieb*, 38 F.3d 933, 935 (7th Cir. 1994) ("A district judge may refer a dispute about sanctions to a magistrate judge for a recommendation under § 636(b)(1)(B) or § 636(b)(3), but the magistrate judge may not make a decision with independent effect.").

Congress that magistrate judges do possess that authority.

Finally, the question of the authority of magistrate judges to impose sanctions under the Federal Rules of Civil Procedure scarcely seems open in this circuit. As noted above, we held in *Hoar* that imposition of a monetary sanction – that is, a sanction that does not dispose of a party's claim or defense – is a "nondispositive" matter and is therefore "committed to the discretion of the magistrate [judge], reviewable by the district court under the 'clearly erroneous or contrary to law' standard." *Hoar*, 900 F.2d at 525.

It is of course true that the sanction imposed in *Hoar* was by reason of discovery abuse and was done under Rule 37, rather than Rule 11, but that is a distinction without a difference. The crucial question is whether the imposition of a sanction that does not dispose of a party's claim or defense (such as a monetary sanction) should be considered more nearly analogous to the "dispositive" orders Congress expressly withheld from magistrate judges or to the punitive and coercive power Congress expressly granted to magistrate judges in the new § 636(e). A monetary sanction – *i.e.*, one that does not dispose of a party's claim or defense – is no more and no less similar to the dispositive rulings withheld by § 636(b)(1)(A) from magistrate judges whether it was imposed by reason of an abuse of a discovery obligation or an abuse of an obligation imposed by Rule 11.[8] I do not see how we in the Second Circuit could justify ruling today that a monetary sanction for abuse of Rule 11 is dispositive, and therefore beyond the authority of magistrate judges, without disavowing our prior holding in *Hoar* that magistrate judges are empowered to impose a monetary sanction.

I note that the analysis should be different for a sanction which does, in fact, dismiss a suit or prevent a claim or defense from being advanced. *See Hoar*, 900 F.2d at 525 ("[T]he imposition of

---

[8] The imposition of a sanction requiring an attorney, or a witness, or a party to pay $100, regardless of whether imposed by reason of a discovery abuse or of abuse in connection with a motion, leaves the claims of the plaintiff and the defenses of the defendant unaffected.

certain sanctions under Rule 37, in some instances, may be considered 'case-dispositive,' requiring *de novo* review." (citing 7 Moore, Lucas & Sinclair, Jr., Moore's Federal Practice ¶ 72.03, at 72-24 (2d ed. 1989))). In such circumstances, the sanction would have the same effect as the rulings expressly excluded by § 636(b)(1)(A), or would be so similar to those rulings as to be implicitly excluded. *See Ocelot Oil*, 847 F.2d at 1462 (noting that magistrate judges are generally authorized to impose Rule 37 sanctions, but ruling that a sanction striking pleadings *with prejudice* effectively constitutes involuntary dismissal of action and is therefore implicitly excluded by § 636(b)(1)(A)). Analyzing the effects of the particular sanction imposed by a magistrate judge, to determine whether it is dispositive or non-dispositive of a claim, is the approach that best implements Congress's intent. *See* 12 Wright & Miller, Federal Practice and Procedure § 3068.2, at 342 (3d ed. 1997) (advocating a "textured view" of § 636, which "requires the court to go beyond the label and consider the impact of the action taken on the case to determine whether it is dispositive").

I conclude that, while reasonable arguments could have been advanced on both sides of the question prior to 2000, when the governing statute was truly silent on the question of the authority of magistrate judges to impose sanctions, since Congress passed the 2000 amendments, all indications very strongly support the conclusion that, with the exception of a sanction in a form that disposes of a claim or defense, § 636 empowers magistrate judges to impose sanctions. Furthermore, since we decided in *Hoar* in 1990 that monetary sanctions are not dispositive and are therefore entrusted to magistrate judges by § 636(b)(1)(A), the question has been resolved for purposes of this circuit's law. Certainly no change in the governing legislation since our decision in *Hoar* could support the conclusion that Congress withdrew that power.

B.

I turn to examine Judge Cabranes's arguments to see how it can be that, upon examination of

12

the same materials, we come to such different conclusions.  Judge Cabranes advances numerous

arguments in support of his conclusion that magistrate judges lack power to impose sanctions.  In my

view, each of his arguments depends on a misperception of the facts or of various rules of law.

Judge Cabranes begins by noting that the "Sixth and Seventh Circuits [in *Bennett v. General Caster

Service of N. Gordon Co.*, 976 F.2d 995, and *Alpern v. Lieb*, 38 F.3d 933,] have held that decisions on Rule

11 motions are dispositive of a claim and are therefore not properly resolved by order of a magistrate

judge."  *Ante* at 2.  He goes on to describe those decisions.  In both cases, the courts concluded that an

award of sanctions shares features in common with an award of monetary damages, a power withheld

from magistrate judges by § 636(b)(1)(A).  The Sixth Circuit in *Bennett* also noted that magistrate judges

were expressly forbidden from exercising the contempt power.  There are numerous reasons why

citation to those decisions, made in 1992 and 1994, cannot properly govern our analysis of the question

today.

The most important reason is that *Bennett* and *Alpern* were decided under the old statute, before

Congress amended it by granting magistrate judges significant contempt powers which it had

previously withheld, and before Congress stated in § 636(e)(4) that the express grant of civil contempt

powers "shall not be construed to limit the authority of a magistrate judge to order sanctions."  At that

time, the statute was opaque as to whether magistrate judges could impose sanctions.  In the absence of

any clear Congressional guidance, the *Bennett* and *Alpern* courts searched for analogies to powers

expressly granted or withheld.  Sanctions were more nearly analogous to awards of money damages

(which were not authorized to magistrate judges in referrals under § 636(b)(1)(A)) than to any power

magistrate judges were authorized at the time to exercise.  And the *Bennett* opinion further noted the

analogy to contempt, which Congress also had expressly withheld.

Today, however, following the revision in 2000, the pertinent analogies are very substantially

13

changed. There is little reason to believe the Sixth and Seventh Circuits would reach the same result if they considered the question anew under the amended statute. In the first place, the statute is no longer opaque, much less silent; Congress's new observation in § 636(e)(4) powerfully suggests that Congress intends magistrate judges to exercise sanctioning power. The very reasons that persuaded the Sixth and Seventh Circuits that the imposition of a sanction should be considered dispositive apply equally to contempts, which Congress has now (within limits) clearly placed in the nondispositive, authorized category. Finally, the similarity between sanctions and contempts is far stronger, for reasons further explained below, than the similarity between sanctions and awards of money damages in resolution of a plaintiff's claim. At the time of the Sixth and Seventh Circuit decisions, the analogy to both contempts and awards of damages argued in favor of the conclusion that Congress had withheld the sanction power. Now the much stronger analogy – the similarity to contempt adjudications – forcefully argues, indeed as an *a fortiori* case, that Congress intends magistrate judges to exercise sanctioning power.[9]

A further problem with Judge Cabranes's focus on the Sixth and Seventh Circuit decisions in *Bennett* and *Alpern* is that his selection of those two cases is arbitrary. As noted above, seven circuits, including ours, considered whether magistrate judges were empowered under the pre-2000 statute to award sanctions. While Judge Cabranes is correct that two circuits concluded that they were not, five circuits concluded that magistrate judges did possess sanctioning power, so long as the sanction imposed was not one which disposed of a claim or defense in the underlying action.[10]

Furthermore, numerous district court decisions, which Judge Cabranes disregards, have

---

[9] Judge Jacobs describes Judge Cabranes's view as "follow[ing] the Sixth and Seventh Circuits." *Infra* at 2. For the reasons explained above, it is no longer possible either to follow, or to reject, the Sixth and Seventh Circuit decisions because the statute they were interpreting has been so substantially modified.

[10] See decisions of the First, Second, Fifth, Ninth, and Tenth Circuits, listed in footnote 6, *supra*.

14

similarly ruled that, while a magistrate judge may not impose a sanction that disposes of a claim or defense, a sanction (such as a monetary penalty) that does not do so is in the nondispositive category and is therefore within the powers conferred on a magistrate judge by § 636(b)(1)(A). *See, e.g., Lawrence v. Wilder Richman Sec. Corp.*, 467 F. Supp. 2d 228, 232-33 (D. Conn. 2006); *Magee v. Paul Revere Life Ins. Co.*, 178 F.R.D. 33, 37 (E.D.N.Y. 1998); *Weeks Stevedoring Co. v. Raymond Int'l Builders, Inc.*, 174 F.R.D. 301, 303-04 (S.D.N.Y. 1997); *Laser Med. Research Found. v. Aeroflot Soviet Airlines*, 93 Civ 5747 (PKL), 1994 WL 584665, at *2 (S.D.N.Y. Oct. 24, 1994).

Judge Cabranes argues that the decisions of the five circuits, including ours, that have upheld magistrate judge authority to sanction are irrelevant because they involved imposition of sanctions under Rule 37 for misbehavior relating to *discovery*, while this case involves a sanction imposed under Rule 11, which relates to pleading, motions, and other papers. He contends that sanctions under Rule 37 for discovery misbehavior are completely different from sanctions under Rule 11.

Judge Cabranes thus advances the surprising proposition that Congress silently, without leaving a clue of those intentions, left us to guess that it intended to authorize magistrate judges to exercise sanctioning power under Rule 37 for abuses related to discovery, but not to exercise sanctioning power under Rule 11 for abuses relating to pleadings and motions. In explanation, Judge Cabranes writes, "[C]oercive authority is entrusted to magistrate judges for matters within their statutory authority. That is why magistrate judges have the power to impose sanctions for violations of discovery orders. . . . [T]he broad scope of a magistrate judge's authority over discovery disputes . . . provides the source of his authority to impose sanctions for the violation of discovery orders." *Ante* at 7-8. There is no support for this argument in any statute, rule, or judicial opinion. If anything, it seems to demonstrate the opposite of what Judge Cabranes contends.

In the first place, the *Hoar* decision said nothing of the kind. It simply examined whether

15

sanction orders should be considered "dispositive" of a party's claim.[11]  Not a word of the discussion

invoked, or even mentioned, "the broad scope of a magistrate judge's authority over discovery

disputes."[12]

The same is true of numerous other decisions of circuit and district courts upholding the

authority of magistrate judges to award sanctions.  No decision I have found justifies a magistrate

judge's authority to impose Rule 37 discovery sanctions on the basis of a magistrate judge's broader

authority or experience in discovery matters than in dealing with pleadings and motions.  These

---

[11] The opinion focused on § 636(b)(1)(A)'s grant of authority to magistrate judges designated by the district court to hear and determine any pretrial matter "except for certain enumerated dispositive motions [as to which] he may only submit proposed findings of fact and recommendations" for determination *de novo* by the district court.  *Hoar*, 900 F.2d at 525 (quotation marks omitted).  Observing that "[m]atters concerning discovery generally are considered 'nondispositive,'" the court went on to conclude that "[m]onetary sanctions pursuant to Rule 37 for noncompliance with discovery orders usually are committed to the discretion of the magistrate, reviewable by the district court under the 'clearly erroneous or contrary to law' standard."  *Id.*  The entire inquiry was into whether the particular sanction imposed had the effect of disposing of a claim. The court went on to caution, citing the Moore treatise, that a sanction which, for example, strikes the pleadings with prejudice would have the effect of involuntarily dismissing the action and would thus be dispositive and accordingly beyond the magistrate judge's power.  *Hoar*, 900 F.2d at 525.

[12] Judge Cabranes's similar attempt to distinguish *Maisonville*, 902 F.2d 746, which upheld a magistrate judge's imposition of sanctions under Rule 11, is unpersuasive for the same reason.  As Judge Cabranes explains, the ruling of the magistrate judge in *Maisonville* was a Rule 11 sanction for a discovery violation, and Rule 11 was amended in 1993 to exclude sanctions arising from discovery disputes.  *Ante* at 4.  From this, Judge Cabranes concludes that the Ninth Circuit's decision is no longer sound, because, he implies, it rested on the fact that "discovery disputes are within the core statutory authority of magistrate judges."  *Id.*

Yet the court's conclusion that the sanction imposed was nondispositive was in no way connected to the fact that it arose out of the discovery context.  Like the many other courts that have ruled that magistrate judges are empowered to impose sanctions (so long as the sanction does not effectively dispose of a claim), the Ninth Circuit reasoned that the monetary sanction was within the magistrate judge's power because it was not dispositive:

> [S]ection 636(b)(1)(A) lists those motions which may not be determined by a magistrate.  Accordingly, any motion not listed, nor analogous to a motion listed in this category, falls within the non-dispositive group of matters which a magistrate may determine.  Rule 11 sanctions are not listed in the group of dispositive matters, nor do the sanctions imposed here have an effect similar to those motions considered dispositive.

*Maisonville*, 902 F.2d at 747-48 (citations omitted).

Furthermore, Judge Cabranes's attempt to discredit the continuing pertinence of *Maisonville* on the ground that discovery disputes are "within the core statutory authority of magistrate judges" is simply an invention without a statutory basis.  If there were such a thing as "core" statutory authorization for discovery, as distinguished from *peripheral* statutory authorization relating to pleadings and motions, presumably some reference to the concept would be found in some statute.  Judge Cabranes cites none.

decisions look to whether the sanction imposed by the magistrate judge in fact disposes of a claim or

defense (in which case it would be *dispositive* and beyond the magistrate judge's authority), or whether,

like a monetary sanction, it imposes a penalty or remedy that does not dispose of a claim or defense (in

which case it is *nondispositive* and falls within the powers conferred on magistrate judges by §

636(b)(1)(A)). *See* 12 Wright & Miller § 3068.2, at 342 (noting that courts have "distinguish[ed]

between discovery sanctions that are dispositive and those that are not"). Nor do the decisions of the

*Bennett* and *Alpern* courts, which held that magistrate judges lacked the power pre-2000 to impose Rule

11 sanctions, suggest that a Rule 11 sanction is more "dispositive" than a discovery sanction, or that

the authorization of magistrate judges to impose a sanction depends on whether it involved abuse of

obligations relating to discovery or to the statements in pleadings, motions, and other papers. So far as

I am aware, Judge Cabranes is the first and only judge to suggest that Congress might have granted to

magistrate judges the authority to award sanctions under Rule 37 for abuse in connection with

discovery while denying them authority to impose sanctions under Rule 11.[13]

Judge Cabranes's observation that "coercive authority is entrusted to magistrate judges for

matters within their statutory authority," *ante* at 7, is particularly puzzling. This is scarcely an argument

for denying magistrate judges sanctioning power over matters under Rule 11. If anything it

demonstrates the opposite. All sorts of motions subject to Rule 11 are routinely referred by district

judges to magistrate judges under the broad authority of § 636(b)(1)(A). Rule 11(b) specifies as to such

a motion or answering paper that "[b]y presenting [it] to the court . . . an attorney . . . certifies that . . .

---

[13] Judge Cabranes further explains that his perception "that the disposition of a Rule 11 [sanctions] motion must be made by a district judge [and not a magistrate judge] is not a disparagement of the authority of magistrate judges to preside over matters properly before them. Indeed, coercive authority is entrusted to magistrate judges for matters within their statutory authority." *Ante* at 7. This observation is puzzling, for the question is not what *we judges* think of the competence of magistrate judges to rule in different areas, but whether *Congress* entrusted them with the power. Judge Cabranes does not point to anything in the statute, before or after its amendment, or in its legislative history, which suggests that Congress intended to distinguish between a magistrate judge's authority to sanction under Rule 37 and her lack of authority to sanction under Rule 11.

the . . . legal contentions [made in it] are warranted by existing law . . . ; [and] the factual contentions [made in it] have evidentiary support . . . ." And Rule 11(c) provides for sanctions for abuse of that obligation. Judge Cabranes does not contend, nor can he in the face of § 636(b)(1)(A), that magistrate judges are without "statutory authority" to handle those motions. If Judge Cabranes is correct that magistrate judges have sanctioning power "for matters within their statutory authority," then it follows that they have sanctioning power over abuses of Rule 11(b) in connection with motions entrusted to them.

Perhaps Judge Cabranes's principal argument is that the imposition of a sanction under Rule 11 is the "functional equivalent of an independent claim" which should therefore be considered dispositive. *Ante* at 5. He points out that, in a different context, "the Supreme Court has compared a motion for Rule 11 sanctions to a criminal contempt charge insofar as each is 'a separate and independent proceeding at law that is not part of the original action.'" *Id.* (quoting *Cooter & Gell*, 496 U.S. at 396). He notes further that "the imposition of sanctions is an issue collateral to and independent from the underlying case," *id.* (quoting *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 333 (2d Cir. 1999)); that a court possesses jurisdiction to impose sanctions arising from the underlying action though it may be ultimately determined to lack subject matter jurisdiction over that action; that an imposition of sanctions is independently appealable; and that the parties to Rule 11 sanctions are often different from the parties to the underlying matter, since it is often the attorney on whom a Rule 11 sanction is imposed. *Ante* at 5-6.

While I have no dispute as to the accuracy of those observations, I do not understand why Judge Cabranes believes they support his argument that magistrate judges lack authority to impose sanctions under Rule 11. Each of the observations Judge Cabranes makes about the separate independence of a Rule 11 sanction from the underlying action is equally true of a sanction under Rule

18

37 (and Judge Cabranes does not dispute that Rule 37 sanctions are deemed nondispositive and thus within the magistrate judge's authorized powers). Each is also equally true of a holding in contempt (and Judge Cabranes does not dispute that Congress has authorized magistrate judges to punish contempts).[14] While Judge Cabranes stresses that the contempt authority delegated to magistrate judges is less complete than the contempt authority of district judges, he cannot dispute that the contempt authority that Congress has explicitly given to magistrate judges shares all the features of independence from the underlying action that Judge Cabranes points to as proof that magistrate judges lack authority to impose Rule 11 sanctions. Whatever force this argument might have had *prior* to Congress's amendment of § 636(e) giving magistrate judges contempt powers in a circuit where magistrate judges were deemed *not* to have authority to impose sanctions under Rule 37, the argument has none *after* the 2000 amendment in a circuit that has ruled that magistrate judges *do* have authority to impose sanctions under Rule 37. In short, if contempts and Rule 37 sanctions are nondispositive and within the magistrate judges' authority, so are Rule 11 sanctions.[15]

Moreover, in asserting that "a Rule 11 motion can be considered the functional equivalent of an action pressing a 'claim' for the breach of the duty set forth in the rule," based on the fact that, as in

---

[14] Judge Jacobs expresses puzzlement over what he sees as "incoheren[ce]" in considering a sanction order sufficiently "dispositive" to be immediately appealable but sufficiently nondispositive to be within a magistrate judge's power under § 636(b). *Ante* at 3. Regardless of whether there is theoretical inconsistency in holding a sanction order to be at once immediately appealable and within the power of magistrate judges, an order of sanctions under Rule 11 is no different in this regard from a summary holding in criminal contempt, which Congress explicitly empowered a magistrate judge to order without *de novo* review by the district court, and which is also immediately appealable. *See Matter of Christensen Eng'g Co.*, 194 U.S. 458 (1904).

[15] Nor does this create an inconsistency with Congress's effort in § 636(b)(1)(A) to withhold from magistrate judges authority to make dispositive determinations. The dispositive determinations listed in that clause, insofar as they relate to civil suits, are determinations of a party's demands for relief pursuant to the claims pleaded, or of the party's right to have the claim adjudicated by the court. They do not include collateral matters relating to misconduct and the court's vindication of its authority. There is no illogic or inconsistency in Congress's withholding of authority to determine a party's claim or the right to maintain the claim before the court, while affirming the authority to punish for misbehavior in the course of the proceedings. Every judicial ruling is determinative *of something.* The imposition of a sanction is a very different sort of ruling from one that determines a party's pleaded claim (at least so long as the form of the particular sanction does not determine the party's right to continue to assert the claim).

19

"an action for damages . . . the desired remedy is a monetary award to the movant," *ante* at 6, Judge Cabranes overstates the degree of similarity between an action for damages and an imposition of sanctions. A significant part of the purpose of an imposition of sanctions is to vindicate the authority of the court and of the rules of law, and to punish for disrespect of that authority. Accordingly a sanction may be imposed even though not sought by an aggrieved party. *See, e.g.*, *Morley v. Ciba-Geigy Corp.*, 66 F.3d 21, 24-25 (2d Cir. 1995) (affirming district court's *sua sponte* imposition of Rule 11 sanctions). The court may impose the sanction because *the court* is aggrieved. Furthermore, while it is undoubtedly true that a sanction order may, and frequently does, include a monetary award to compensate an aggrieved person or party for the inconvenience and expense caused by the offender's breach, that is not an indispensable part of a sanctioning order. Because the injury occasioning the sanction is to the court, Rule 11(c)(4) expressly provides, "The sanction may include nonmonetary directives; [or] an order to pay a penalty into court . . . ." Thus a sanctioning order may involve a direction to pay money *to the court*, *see, e.g.*, *LaVigna v. WABC Television, Inc.*, 159 F.R.D. 432, 437 (S.D.N.Y. 1995), a direction to the offender to publish the fact of the sanction, *see, e.g.*, *In re Rezulin Prods. Liability Litig.*, No. 00 Civ. 2843 (LAK), 2005 WL 626866, at *2 (S.D.N.Y. Mar. 17, 2005); *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, No. 98 Civ. 10175 (JSM), 2002 WL 59434, at *10 (S.D.N.Y. Jan. 16, 2002), a direction to an attorney who demonstrates insufficient knowledge of the governing rules to attend education courses, *see, e.g.*, *LaVigna*, 159 F.R.D. at 437, or a requirement that an abusive litigant seek leave of court before filing further actions, *see, e.g.*, *Colida v. Nokia Inc.*, No. 07 Civ. 8056 (KMW), 2008 WL 4449419, at *2 (S.D.N.Y. Sept. 29, 2008).

In short, a sanction in some circumstances may have little or no resemblance to an award of money damages as the objective of a party's civil claim, but it always has great resemblance to a holding in contempt. Moreover, to the extent that sanctioning orders *do* share common features with awards of

damages, this is no more true of sanctions awarded under Rule 11 than of sanctions awarded under Rule 37, which we have ruled are within the authority of magistrate judges. Accordingly, the imposition of sanctions under Rule 11 is far more nearly analogous to powers granted to magistrate judges – the contempt power and the power to sanction under Rule 37 – than it is to an award of damages in a suit for damages.

Judge Cabranes's next argument is that under "general principles of statutory interpretation," a "presumption in favor of continuing judge-made law absent clear congressional intent otherwise" requires that we "interpret Congress's decision in 2000 to grant only limited contempt powers as an implicit ratification of the earlier Sixth and Seventh Circuit[] holdings that magistrate judges do not have the authority to issue Rule 11 sanctions." *Ante* at 9. I can see no reason why. As Judge Cabranes acknowledges, at the time Congress passed the 2000 amendment, there was a circuit split on the question whether magistrate judges could impose sanctions under Rule 11, with the Sixth and Seventh Circuits saying No, while the Ninth Circuit held Yes. Why would Congress's silence on this question constitute unexplained, implicit endorsement of the holdings that said No, rather than of the holding that said Yes?[19] Furthermore, since Congress gave no indication whatsoever that it sees a difference between the imposition of sanctions by magistrate judges under Rule 11 and Rule 37, if we were looking to impute to Congress approval of the holdings of courts, why would we not impute approval

---

[19] Judge Cabranes contends that Congress should be understood to have disregarded the Ninth Circuit's *Maisonville* ruling in amending the statute because of a 1993 change in Rule 11 to exclude sanctions related to discovery. *Ante* at 9 n.13. But the ruling of the Ninth Circuit did not depend on the fact that the sanction was imposed in the context of discovery. *See supra* note 12. Furthermore, to my knowledge, this criticism of *Maisonville* has never before been advanced by any court or commentator, and *Maisonville* is still good law in the Ninth Circuit. *See, e.g., United States v. Rivera-Guerrero*, 377 F.3d 1064, 1067-69 (9th Cir. 2004) (analyzing a question of magistrate judge's authority "under *Maisonville*"); *see also Watson v. Maxwell*, 142 F.3d 447, 1999 WL 228223, at *1 n.1 (9th Cir. Apr. 28, 1998) (unpublished) (affirming Rule 11 sanctions imposed by magistrate judge, citing *Maisonville*). It would be extremely odd if, in 2000, Congress silently deemed *Maisonville* overruled on a ground advanced for the first time today by Judge Cabranes, and in the face of the Ninth Circuit's continued reliance on the precedent.

21

of the holdings of the five circuits which upheld the power of magistrate judges to impose sanctions, rather than the holdings of the two circuits that ruled otherwise?[20]

Finally, Judge Cabranes argues, as a refutation of my arguments referring to Congress's grant of contempt authority to magistrate judges in the 2000 amendments:

> We cannot bootstrap . . . the minimal grant of authority to magistrate judges to punish misconduct that occurs before their eyes into a plenary power to hold litigants and attorneys in contempt or impose Rule 11 sanctions. To do so would undermine Congress's decision to grant magistrate judges certain powers and withhold others.

*Ante* at 9.

This brief argument contains three substantial mistaken premises. (1) Perhaps least important, as reviewed above, Judge Cabranes understates the extent of contempt authority that Congress conferred in § 636(e). I think it undeniable that, in comparison with the prior blanket prohibition of all contempt authority, the 2000 amendments express a very significant upgrading of Congress's confidence in magistrate judges to exercise punitive and coercive contempt powers. (2) Judge Cabranes misunderstands and misstates my argument. I have not suggested that Congress's grant of limited authority to magistrate judges to impose contempts was converted "into plenary power to hold litigants and attorneys in contempt." It is indisputable that the contempt authority conferred is less than plenary. Nonetheless, it is substantial. (3) Finally, Judge Cabranes asserts that acceptance of my argument would "undermine Congress's decision to grant magistrate judges certain powers and withhold others." This argument simply assumes its conclusion. If in fact Congress had prohibited magistrate judges from imposing sanctions, and I were trying somehow to defend the contrary rule,

---

[20] Moreover, it is not as if the imputation would arise from Congressional silence. As noted above, in passing the 2000 amendments, Congress stated in the new § 636(e)(4) that its decision to confer civil contempt authority on magistrate judges in certain classes of cases "should not be construed to limit the authority of a magistrate judge to order sanctions." Judge Cabranes's suggestion to impute to Congress – under "general principles of statutory construction" – approval of the holding of two of the seven circuits to have addressed the question would also require imputation of an intention contrary to the intention Congress expressed in § 636(e)(4).

Judge Cabranes would be correct that my argument would "undermine Congress's decision to grant magistrate judges certain powers and withhold others." The reason, however, that Judge Cabranes and I set forth our arguments is that Congress has not enacted a clear provision one way or the other. My arguments do not seek to "undermine" Congress's decision. They seek to interpret Congress's intentions in the absence of a clear congressional mandate.

In conclusion, the developments in the law during the past two decades seem to me to have removed any reasonable doubt that a magistrate judge may impose money sanctions under Rule 11, at least in a circuit such as ours where magistrate judges are authorized to impose sanctions for discovery abuse. Had we faced this question in the 1980s, when Congress withheld contempt power from magistrate judges and our court had not yet found them authorized to impose sanctions in a discovery matter, we could reasonably have resolved the question either way. Reasoning from the broad authorization of § 636, the absence of any exclusion for sanctions, and the fact that a money sanction is collateral and is not dispositive of any claim or defense in the suit, we could reasonably have concluded, as did five circuits including ours, that magistrate judges are authorized to impose money sanctions. Or, reasoning from the fact that an award of a sanction is much like a contempt adjudication, which Congress had withheld from magistrate judges, and which disposes completely of a discreet controversy, we could reasonably have concluded, as did two circuits, that Congress intended to withhold sanctioning power from magistrate judges. However, since Congress amended § 636 to expressly grant contempt powers to magistrate judges and our circuit ruled in the context of a discovery matter that magistrate judges are authorized to impose money sanctions, all that has changed. In a circuit that authorizes sanctions in the discovery context, no reasonable argument remains that magistrate judges, although expressly authorized by Congress to impose contempts and found also to be authorized to impose money sanctions for discovery abuses, nonetheless lack power to award such

sanctions for abuses relating to pleadings and motions. There is no meaningful difference between sanctions relating to discovery and sanctions relating to pleadings and motions.

After much discussion in a case in which the question need not be resolved, Judge Cabranes and I have each set forth our arguments. If and when a case arises in which a court needs to decide whether Congress has given magistrate judges authority to impose sanctions, perhaps that court will find our debate helpful in answering the question. In the meantime, because the question remains undecided, district judges would be well advised to review magistrate judge orders imposing sanctions both *de novo* and under a deferential standard. If the district court makes clear that, regardless of whether the standard of review is deferential or de novo, it would impose the same sanction, the issue of the magistrate judge's power will be moot, as it will be in the case in which the district court rejects the sanction on either standard. It is only in the case where the district court would uphold the sanction if review is deferential but would withhold it if review is *de novo* that a higher court will need to decide the question. It is altogether possible that the day requiring decision will never come.

DENNIS JACOBS, *Chief Judge*, concurring:

The issue that splits our panel, but which is not necessary to the resolution of this case, is the authority of magistrate judges to impose sanctions under Rule 11 of the Federal Rules of Civil Procedure in cases referred to them under 28 U.S.C. § 636(b). Do magistrate judges have the authority to order Rule 11 sanctions themselves, or only to make a recommendation of Rule 11 sanctions to the district court?

Section 636 of Title 28 sets the metes and bounds of a magistrate judge's authority. When a district court refers a matter to a magistrate judge under § 636(b), the extent of the magistrate judge's authority turns generally on whether the matter is "dispositive." *See generally Williams v. Beemiller, Inc.*, 527 F.3d 259, 264–65 (2d Cir. 2008). As to nondispositive matters, the magistrate judge may rule, but as to dispositive matters, the magistrate judge may do no more than recommend. *Id.* In turn, the district court reviews a magistrate judge's order on nondispositive matters under a clearly erroneous standard, but reviews its recommendation *de novo. Id.*

Section 636 does not specifically deal with sanctions.[1] We have held in *Thomas E. Hoar, Inc. V. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990) that magistrate judges may impose sanctions under Rule 37 of the Federal Rules of Civil Procedure for noncompliance with discovery orders. As to the related issue of a magistrate judge's authority to hold persons in contempt, Congress explicitly withheld such authority in the initial Federal Magistrates Act. *See* Pub. L. No. 90-578, § 101, 82 Stat. 1107, 1113-14 (1968). In 2000, Congress amended § 636 to give magistrate judges limited contempt powers. Now, magistrate judges have summary criminal contempt authority over anyone in their presence, under § 636(e)(2); as well as additional criminal contempt authority, and the full civil contempt authority of a

---

[1] The word "sanction" is used only in subsection (e)(4), which sets out the civil contempt authority of magistrate judges in consent cases and then states: "This paragraph shall not be construed to limit the authority of a magistrate judge to order sanctions under any other statute, the Federal Rules of Civil Procedure, or the Federal Rules of Criminal Procedure." 28 U.S.C. § 636(e)(4).

district court, in any case referred to them on consent of the parties (pursuant to § 636(c)), under § 636(e)(3)-(4). With respect to sanctions however, specific direction from Congress is still absent.

Against this backdrop, Judge LEVAL is of the view that magistrate judges may impose Rule 11 sanctions, the "lighter, less consequential form of the same general species as a holding in contempt." Concurrence of Judge Leval at 21. Judge CABRANES, on the other hand, is of the view that *Thomas E. Hoar* is limited to the Rule 37 context. Judge CABRANES would thus follow the Sixth and Seventh Circuits in holding that a magistrate judge may do no more than *recommend* Rule 11 sanctions--on the principle that imposition of sanctions is dispositive of an issue that is "the functional equivalent of an independent claim." Concurrence of Judge Cabranes at 5. *See Alpern v. Lieb*, 38 F.3d 933, 936 (7th Cir. 1994); *Bennett v. Gen. Caster Serv. of N. Gordon Co.*, 976 F.2d 995, 998 (6th Cir. 1992) (per curiam).

This issue has divided the district courts in our Circuit. *Compare Rates Tech. Inc v. Mediatrix Telecom, Inc.*, No. 05-cv-2755(JS)(AKT), 2007 U.S. Dist. LEXIS 48237, at *4 (E.D.N.Y. June 29, 2007) (applying *de novo* review), *with McAllan v. Von Essen*, 517 F. Supp. 2d 672, 678 (S.D.N.Y. 2007) (applying a clearly erroneous standard of review because "[o]rders concerning Rule 11 sanctions . . . are . . . considered nondispositive"). *See also Colida v. Nokia Inc.*, No. 07 Civ. 8056(KMW)(HBP), 2008 WL 4449419, at *2 n.4 (S.D.N.Y. Sept. 29, 2008) ("Whether motions for sanctions are dispositive or non-dispositive is currently a contested point of law within the Second Circuit."), *aff'd*, No. 2009-1326, 2009 WL 3172724 (Fed. Cir. 2009) (per curiam). The circuits themselves are split. *Compare Alpern*, 38 F.3d at 936 (imposition of Rule 11 sanctions is dispositive), *with Maisonville v. F2 America, Inc.*, 902 F.2d 746, 748 (9th Cir. 1990) (imposition of Rule 11 sanctions is nondispositive). *See also Lancellotti v. Fay*, 909 F.2d 15, 17 n.2 (1st Cir. 1991) (avoiding the "vexing" question whether Rule 11 sanctions ordered by a magistrate judge are properly characterized as dispositive or nondispositive). The need for guidance is clear.

2

However, given our earlier decision in *Thomas E. Hoar*, and the 2000 amendments to § 636, any attempt to settle this issue now would only create more problems.

For example, Judge CABRANES proposes to distinguish Rule 11 sanctions from Rule 37 sanctions on the basis of the traditionally "broad scope of a magistrate judge's authority over discovery disputes," which "provides the source of his authority to impose sanctions for the violation of discovery orders." Concurrence of Judge Cabranes at 8. But using such a broad principle to patrol the border between Rule 11 and Rule 37 sanctions can become quixotic. How does one classify misrepresentations regarding compliance (or not) with discovery obligations?

On the other hand, holding that magistrate judges do possess authority to impose Rule 11 sanctions would create a confusing body of law as to what orders are dispositive under § 636(b), and the related question of when a lower court's order is appealable pursuant to the collateral order doctrine. For the reasons stated by Judge CABRANES, as well as the Sixth and Seventh Circuits (in *Bennett* and *Alpern* respectively), the imposition of Rule 11 sanctions is the functional equivalent of an independent claim[2]; for that reason, Rule 11 sanctions are immediately reviewable in this Court pursuant to the collateral order doctrine. *Sanko S.S. Co. v. Galin*, 835 F.2d 51, 53 (2d Cir. 1987) (Rule 11 sanction is a reviewable collateral order, a "conclusive determination . . . completely separate from the merits . . . and [not] effectively reviewable on appeal from a final judgment"). If we follow Judge LEVAL's proposed holding, then Rule 11 sanctions could be referred to a magistrate judge as nondispositive for purposes of § 636(b), yet any imposition of sanctions would be dispositive enough to be immediately reviewable under the collateral order doctrine. This is incoherent.

---

[2] *See Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 396 (1990)(comparing Rule 11 sanctions to a criminal contempt charge insofar as each is "a separate and independent proceeding at law that is not part of the original action" (internal quotation marks omitted)).

In sum, each of my colleagues would rewrite § 636, in a different way. I respectfully suggest that this knot needs to be untied by Congress or by the Supreme Court.